Bruce Lamont BAILEY *v.* STATE of Arkansas

CR 85-76                                    697 S.W.2d 110

Supreme Court of Arkansas
Opinion delivered October 14, 1985

*William R. Simpson, Jr.*, Public Defender, *Jerome T. Kearney*, Deputy Public Defender, by: *Carolyn P. Baker*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie C. Griffin*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant was convicted of rape. The only issue on appeal is whether a mistrial should have been declared because of a statement, made by the prosecutor in closing argument, which the appellant says was a reference to his failure to testify in his defense. We find the appellant's position to be correct, and thus the case is reversed.

The testimony of the prosecuting witness, Doris Watson,

was that the appellant took her to his room, bound her and raped her several times over a 24-hour period. She said when she at last escaped she went to the house of a friend who went to get a sister of Ms. Watson.

In his closing argument, the prosecutor said:

> The only thing that we've heard here today about which occurred in that room is from Doris Watson. She's the only person. These two ladies that were called, they weren't in that room.

Counsel for the appellant immediately moved for a mistrial which was denied.

■ The impropriety of a reference to failure of an accused to testify has been recognized by this court since at least as early as *Lee* v. *State*, 73 Ark. 148, 83 S.W. 916 (1904). While the principal contemporary case on protection of the U.S. constitutional right to remain silent is *Chapman* v. *California*, 386 U.S. 18 (1967), we have cases prior to 1967 which reached the same result, some of which are based simply on Ark. Stat. Ann. § 43-2016 (Repl. 1977) which guarantees that no presumption may be created by an accused's failure to testify. For example, in *Evans and Foust* v. *State*, 221 Ark. 793, 255 S.W.2d 967 (1953), we said, quoting *Bridgman* v. *State*, 170 Ark. 709, 280 S.W. 982 (1926):

> This court is committed to the rule that under . . . [§ 43-2016] . . . it is improper and presumptively prejudicial for the prosecuting attorney to call the attention of the jury to the failure of the accused to testify.

While we need not rely on *Chapman* v. *California, supra*, the position we established long ago has been reinforced by that case.

■ The reference in *Evans and Foust* v. *State, supra*, was fairly direct, but we have been equally unwilling to allow veiled references. In *Adams* v. *State*, 263 Ark. 536, 566 S.W.2d 263 (1978), we reversed a conviction because the prosecutor said in closing argument:

> To convict him, you don't have to disbelieve any part of their case, because what did the defense, how many witnesses did the defense put on for your consideration?

Chief Justice Harris and Justice Fogleman dissented in that case. Their dissenting opinions point out, citing many cases, that a prosecutor may refer to the fact that the state's evidence is undisputed. The majority opinion, however, distinguished those cases from remarks which seem meant to refer to the defendant's failure personally to dispute the state's case as opposed to the failure of the defense to present any witness or evidence to dispute the state's case. The case before us now falls into the category described by the majority view in *Adams* v. *State, supra. See also McCroskey* v. *State,* 266 Ark. 806, 586 S.W.2d 1 (Ark. App. 1979). By saying "[t]he only thing that we've heard here today about which happened in that room is from Doris Watson," he must have been referring to the appellant's failure to testify. No evidence showed the other women had been in the room. Even had there been any such evidence, the damage occurred when the statement was made. It could not be repaired, and a mistrial should have been declared.

Reversed.

PURTLE, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. Doris Watson testified that appellant, Bruce Lamont Bailey, a former boyfriend, accosted her as she was walking near her home. He forced her into a room at the Oasis Motel, where he kept her bound and gagged for twenty-four hours. She was beaten, whipped with an electrical cord and raped repeatedly. The testimony of a physician and nurse who examined her after she escaped established the presence of male sperm in her vagina, "numerous whelps and bruises" on her body and a "significant amount" of trauma to the external vagina. She was fifteen years old.

The appellant did not testify. The theory of the defense was that the witness had gone willingly into the motel room with Bailey. The defense called two witnesses who testified they had seen Bailey and Doris Watson near the motel—one said they were arm in arm, the other said nothing out of the ordinary occurred.

The majority opinion does not suggest that the prosecutor made a direct reference to the appellant's having declined to testify, when he said:

> The only thing that we've heard here today about which occurred in that room is from Doris Watson. She's the only person. These two ladies that were called, they weren't in that room.

but finds that a "veiled reference" was present in the remarks, thus bringing them within the ambit of *Adams* v. *State*, 263 Ark. 536, 566 S.W.2d 263 (1978), where the prosecutor said:

> To convict him, you don't have to disbelieve any part of their case, because what did the defense, how many witnesses did the defense put on for your consideration?

I submit that finding the dividing line between "veiled references" that are permissible as opposed to those that are not is too subjective, as almost any remark which alludes to the weakness of the defendant's case might be seen as a "veiled reference" where the defendant has not testified or called other witnesses. The problem is more than theoretical, and the absence of an objective standard is creating difficulties for both appellate courts and doubtless for prosecutors and trial judges as well. See dissenting opinions of Chief Justice Harris and Justice Fogleman, *Adams* v. *State, supra,* and the majority and dissenting opinions in *Phillips* v. *State*, 12 Ark. App. 319, 676 S.W.2d 753 (1984).

Obviously, a better test is needed than the ad hoc basis now being applied. I believe the prosecutor should be able to refer to the weakness of the defendant's case, or to the absence of contradictions in the state's proof, so long as he or she does not point to the fact that the defendant has not testified, or imply that inferences may be drawn from the defendant's silence. Where the remarks are marginal and fall within what might be called "veiled references," we would do better to rely on the trial judge to gauge the impact of the remarks. See *Perry* v. *State, infra.*

Moreover, I fail to see how the remarks in this case can be seen as drawing attention unduly to the defendant not having testified. The remarks are little more than a fair comment on the evidence. What is the difference in the prosecutor saying, "the only thing we've heard here today about what occurred in that room is from Doris Watson," and, "Doris Watson's testimony that she was raped, beaten and kept prisoner is uncontradicted and undenied," which we have upheld, (*Moore, Frazier &*

*Davidson* v. *State,* 244 Ark. 1197, 429 S.W.2d 122 (1968); *Harris* v. *State,* 260 Ark. 646, 543 S.W.2d 459 (1976)) or, "what explanation has [the defendant] made?," which we upheld in *Cascio* v. *State,* 213 Ark. 418, 210 S.W.2d 897 (1948); or "Doris Watson's testimony is undisputed and undenied and he (the defendant) cannot deny it," (upheld in *Davis* v. *State,* 96 Ark. 7, 130 S.W. 547 (1910)); or, "You haven't heard one person who was there testify that [Bruce Lamont Bailey] didn't do this. The people that were there all told you that [Bruce Lamont Bailey]. . . ," which was upheld in *Phillips* v. *State, supra.*

The majority says the prosecutor "must have been referring to the appellant's failure to testify," when he said the only thing we've heard here today about what occurred in that room is from Doris Watson. But that ignores testimony that the appellant's brother, Willie Foreman, was also in the room during the time Doris Watson says she was held there against her will. That surely negates the majority's conclusion that the remarks drew attention to the appellant's failure to testify. Some courts have distinguished similar remarks when other witnesses could have been called by the defense. See *State* v. *Brown,* 132 N.W.2d 840 (S.Ct. S.D. 1965).

We have often said that a mistrial is a drastic remedy—one that should be resorted to only when the prejudice is so manifestly clear that the trial cannot in justice continue. *Orsini* v. *State,* 281 Ark. 348, 665 S.W.2d 245 (1984); *Moss* v. *State,* 280 Ark. 27, 655 S.W.2d 375 (1983). These remarks hardly rise to that level, indeed, they are less pointed than many this court has approved over the years. See cases cited in Chief Justice Harris' dissent, *Adams* v. *State, supra,* and *Phillips* v. *State, supra.* In *Perry* v. *State,* 277 Ark. 357, 642 S.W.2d 865 (1982), we recognized that the trial court's ability to judge the character of these issues was superior to our own:

> We are not in a position to know how the statement was delivered, with what inflections and emphasis, and are not able to see how the jury perceived it. The trial court has a broad latitude of discretion in supervising and controlling arguments of counsel and its decisions are not subject to reversal unless there is a manifest abuse of that discretion.

I believe the remarks in the case fall in that category and we

should leave the trial judge's discretion undisturbed.