Mark Allen ELSER *v.* STATE of Arkansas

CA CR 01-1326                                      89 S.W.3d 353

Court of Appeals of Arkansas
Division IV
Opinion delivered November 13, 2002

*Witt Law Firm, PC,* by: *Ernie Witt,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Lauren Elizabeth Heil,* Ass't Att'y Gen., for appellant.

TERRY CRABTREE, Judge. A jury sitting in the Crawford County Circuit Court convicted the appellant, Mark Allen Elser, of driving while intoxicated. The trial court sentenced him to twenty-four hours in the county jail, suspended his driver's license for ninety days, and ordered him to pay court costs and a $450 fine. On appeal, appellant argues that the trial court erred in denying his motion for mistrial. In addition, he claims that the trial court erred in refusing to allow him to present

exculpatory evidence. We agree with appellant's second argument and reverse and remand.

At approximately 3:30 a.m. on October 3, 2000, Officer Cletus Hudson of the Van Buren Police Department noticed appellant's truck parked on the shoulder of a ramp leading onto the eastbound lane of Interstate 540. The truck's motor was running and, in Officer Hudson's estimation, was not parked a safe distance from the fog line. The officer approached the truck and, finding appellant asleep behind the wheel, knocked on the window several times. Appellant eventually awoke and opened the door of the truck. Officer Hudson testified that he smelled a strong odor of intoxicants. The officer also testified that appellant was unsteady on his feet, slurred his speech, failed two field-sobriety tests, and failed a portable breathalyzer test.

The BAC Datamaster at the Crawford County Jail measured appellant's blood-alcohol content at .10. Appellant subsequently pleaded no contest in the Van Buren Municipal Court to driving while intoxicated. He appealed to the circuit court, and a jury convicted him of driving while intoxicated, first offense.

■ For appellant's first point on appeal, he claims that the trial court erred by denying his motion for mistrial after the prosecutor referred to his anticipated testimony during her opening statement. A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or upon manifest prejudice to the complaining party. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000).

■ An allegedly improper comment on the defendant's failure to testify usually occurs during the prosecutor's closing argument, when the evidence is closed and the defendant's opportunity to testify has passed. *See Adams v. State*, 263 Ark. 536, 566 S.W.2d 387 (1978). Under those circumstances, a comment that draws attention to the defendant's failure to testify is improper

because it creates the risk that the jury will surmise that the defendant's failure to testify was an admission of guilt. *Id.*

However, a comment during the prosecutor's opening statement is somewhat different. In addition to the risk that the jury will infer an admission of guilt from a defendant's subsequent failure to take the stand, there is also the risk that, in order to prevent the inference, the defendant will be compelled to testify. *See Clark v. State*, 256 Ark. 658, 509 S.W.2d 812 (1974). Here, appellant ultimately testified, but the record reflects that the prosecutor's reference to appellant's anticipated testimony did not compel him to testify. In fact, questions posed by defense counsel during *voir dire* suggest that appellant had decided to testify prior to the beginning of his trial:

> DEFENSE COUNSEL: This man's gonna testify, this officer sitting right here next to me about what happened in this case, I don't anticipate there are any grandiose differences in their testimony, but I suspect there will be some differences in his testimony and Mark's testimony, that's the framework I'm setting for you. Now since you're related to a Van Buren Police Department officer my question to you is specific, do you believe you can judge his credibility and Mark's credibility on an even level, or would you be inclined as most people are, to believe the uniformed officer, if the uniform's testimony is disputed by the person that's not in uniform?

> JUROR: I believe I could be fair.

> DEFENSE COUNSEL: You think you could be fair. Okay, so what you are saying is you could judge the testimony of this officer and Mark or anyone else and make a conclusion as to who to believe and who not to believe, and the fact that one of the witnesses is a police officer is not going to influence you, is that correct?

We find no indication in the record that the prosecutor's reference to appellant's testimony actually compelled appellant to testify. In fact, it appeared at the time of opening statements that appellant had already decided to do so. In addition, appellant never requested a cautionary instruction that could have prevented the jury from drawing an adverse inference if he decided not to take the stand. *See Lawson v. State*, 74 Ark. App.

257, 47 S.W.3d 284 (2001). The failure to request a cautionary instruction should not inure to appellant's benefit on appeal. *Id.* Moreover, appellant failed to make a record that he was testifying only because he was compelled to do so by the prosecutor's comments. Because appellant did in fact take the witness stand, any prejudice he may have suffered due to the prosecutor's opening remarks was remedied. Therefore, we conclude that there was no violation of appellant's right to remain silent. We hold that the trial court did not err by refusing to grant a mistrial.

Additionally, appellant argues that the prosecutor's reference to his testimony was improper because it exceeded the proper scope of her opening statement. Appellant failed to preserve this argument for appellate review as he did not make it before the trial court. Arguments not raised at trial will not be addressed for the first time on appeal. *Hutcherson v. State*, 74 Ark. App. 72, 47 S.W.3d 267 (2001). Parties are bound on appeal by the scope and nature of the objections and arguments presented at trial. *Id.*

■ Next, appellant contends that the trial court erred by excluding his testimony about the results of the portable breathalyzer test that Officer Hudson administered at the scene of the arrest. Officer Hudson testified that appellant failed the portable breathalyzer test and two field sobriety tests. Arkansas Code Annotated section 5-65-103(b) (Repl. 1997), in effect at the time, specifies that it is unlawful to "operate or be in actual control of a motor vehicle if at the time there was one-tenth of one percent (0.10%) or more by weight of alcohol in a person's blood as determined by a chemical test of the person's blood, urine, breath, or other bodily substance." According to appellant, the portable breathalyzer measured his blood-alcohol content at .09, and therefore, was exculpatory evidence that he was entitled to introduce under *Patrick v. State*, 295 Ark. 473, 750 S.W.2d 391 (1988).

■ In *Patrick*, the Arkansas Supreme Court was asked to decide whether the results of a portable breathalyzer test were admissible to indicate that a person was *not guilty* of DWI. Such results are not admissible to prove that a person is *guilty* of DWI. *See* Ark. Code Ann. § 5-65-201—207 (Repl. 1997); *Patrick, supra.* The court held that the results were admissible because the evi-

dence was exculpatory, critical to the defense, and sufficiently reliable. *Patrick, supra.*

In that case, the prosecutor made a pretrial motion to prevent any reference to the portable breathalyzer test or its results. Dr. Roger Hawk, an assistant professor at the University of Arkansas at Little Rock, testified at the pretrial hearing as an expert on breathalyzers. The defense proffered his testimony for the reliability of the portable breathalyzer test, the results of a test he conducted, and his opinion on the results of the test administered to Patrick. After the hearing, the trial judge granted the prosecutor's motion and prevented any reference to the test, its results, or any testimony by the expert. Thereafter, the jury convicted Patrick of DWI. The supreme court reversed and remanded the jury verdict because Patrick was denied due process to present evidence of his innocence.

The State insists that the case at bar is distinguishable from *Patrick.* The State argues that appellant cannot use the portable-breathalyzer-test results to show the *amount of alcohol* in his blood. The State claims that *Patrick* limits the use of these results to establishing the *absence of alcohol* in a person's blood. In this instance, appellant sought to introduce the quantitative results of the portable breathalyzer test to refute the BAC Datamaster test results.

After carefully reviewing the supreme court's language in *Patrick,* we are convinced that the trial court should have allowed appellant to testify about the results of the portable breathalyzer test that Officer Hudson administered at the scene of the arrest. In *Patrick,* the court referred to the test results as "not so inherently unreliable that a jury cannot rationally evaluate it." *Id.* at 480, 750 S.W.2d at 394. The court also noted that such test results were necessary for Patrick to receive a fair trial. Here, appellant's testimony about the test results was crucial to his defense. The jury should have been allowed to weigh appellant's testimony about the test results from the portable breathalyzer against the test results from the BAC Datamaster.

Unlike Patrick, appellant did not proffer any evidence regarding the model of the portable breathalyzer that was used in his case, or its reliability for measuring the quantity of alcohol in

his blood. However, we do not believe that this proffer was necessary for us to conduct a review of the matter. Rather, we believe that this type of evidence goes to the weight to be given to the portable-breathalyzer-test results rather than the admissibility of it.

We hold that the trial court abused its discretion by excluding appellant's testimony about the results of the portable breathalyzer.

Reversed and remanded.

STROUD, C.J., and BAKER, J., agree.